I am Joseph Brooks from the FDIC's Appellate Litigation Unit. This appeal presents two independently dispositive questions. First, whether Central can sue Chase for breaching a lease agreement that Central entered into not with Chase, but with Washington Mutual Bank. The second question, which this Court would only reach if it concluded that Central had such standing, is whether Central could request and receive a termination of the lease, subsequently acquire the property covered by the lease and sell it at a six-figure profit, and then turn around seven months later and sue Chase for all the rent that would have been due under the lease agreement over the next 20 years. I'd like to begin if I could with standing. Under this Court's controlling decision in Excel-Rillabrook, the standing issue in this case essentially boils down to whether or not Central and Chase would be in primity of estate if the lease agreement that is at issue had been assigned by the purchase and assumption agreement. The reason for that is that in Excel-Rillabrook, this Court held that a lessor in the precise position that Central is in here, in this case, with respect to the P&A agreement, did not have standing as an intended third-party beneficiary. This Court did find an alternative basis, and that is if the third party, asserting standing to interpret the purchase and assumption agreement, would be in privity of estate. It was based on property law principles. Here there could not have been any privity of estate, and the reason for that is this. The contract between Central and Bomar, the owner of the property that is the subject of the lease agreement, is an option contract. As such . . . Well, looking at that contract, it seems like it gives a right to specific performance. How is that consistent with it being an option contract if the other party could have required Central to perform? Because under the Texas Court of Appeals decisions in Seelback and City of Harlingen, cases in which there were putative lease agreements with virtually identical remedy provisions that provided multiple remedies, in both of those cases, as here, the agreements were subsequently modified, in one case by an addendum, in the other case by an addition of a clause that provided that the earnest money would be payable, would be payable, to the seller in the event of the buyer's default. Similarly, here, in the First Amendment to this contract, it provides that as of the date it was executed, which was more than six months before WAMU failed, as of the date that the First Amendment was executed, the $15,000 earnest money deposit was released to the seller. That meant that the provision that said you can have earnest money or other remedies, because the earnest money was taken, the or other remedies were gone, and in City of Harlingen and Seelback, the Texas Courts of Appeals both held that that converted what might otherwise have been a contract for sale into an option contract. In addition, there are three other factors here, Your Honor. There's four factors that the Texas Courts generally look at. They're all described in the City of Harlingen case, and all four of them are present here, indicating an option contract. The second one is that the contract has prospective language. It says that the seller agrees to sell, not that it sells, and that the buyer agrees to buy. And again, City of Harlingen, Seelback, a number of cases say that indicates an option contract. The third factor, another critical factor, is time is of the essence. Indeed, in the Seelback case, the court said that a provision that time is of the essence is the hallmark of an option contract. And finally, and perhaps most importantly here, the contract expressly provides in paragraph 10 that there was no right to possession until the closing, and the closing on that sale contract did not take place until months after, months after Central entered into a contract to sell the land to IBC. So that between the time that that contract was entered with IBC, going back to the time that WAMU failed, at no point in time within that couple months period of time was it possible for Central and Chase to be in privity of estate. Because at no point in time did, go ahead, John. Go ahead and finish the point, but I have a point. Well, my only point would be at no point in time did Central either have possession of the property or, as my brother lawyer argues in their briefs, they said, well, they had equitable title. No. These cases all hold an option contract does not convey equitable title. So no equitable title, no possession, no privity of estate under X.L. Willowbrook, no standing. Are the factors in the city of Harlingen and whatever else has the same sort of approach in determining whether this is an option contract or not, are those trying to figure out what the intention of the parties were? Is that evidence, indicia of intention, or is that something more fundamental where intent doesn't matter? I think what it is, Your Honor, it's just simply interpreting unambiguous terms of a contract and saying, as a matter of law, when a contract has sometimes any one of these, but certainly all four of these provisions, as a matter of law, under Texas law, that is an option contract, that is not a contract of sale. Raise that point to try to figure out what relevance it has that the district judge found that the seller, I mean that Central, believed it had the obligation to purchase. Well, Your Honor, this case has a lot to do with what a lot of people believe the contracts meant. Of course, my client believed that a contract provided that it had, you know, that Chase had an option. But at the end of the day, it's not what the party believed. It would be if it's an ambiguous contract or those factors are looking for the intent of the parties. And what one of the parties thought it had to do would be relevant. But you say that's not what this is. Your Honor, I don't believe that the issue, well, we certainly raised it. You know, we have it in our brief. We said below in our summary judgment papers, and they're quoted in our brief, we said, listen, if you don't possess the lease, you can't own it. And they didn't possess it. Therefore, they weren't in privity of estate. The district court never addressed that issue. Didn't address it at all. So the district court, by the record that I've seen, never considered whether the Bomar Central contract was an option contract or a contract of sale. Never considered whether, in fact, if that lease agreement were signed, it would have in fact created privity of estate based on the terms of that agreement. This case is unlike Excel Willowbrook where it was undisputed that all of the lessors in that case owned the property. Here, the property was not owned. It wasn't owned until months after the request for the termination and until months after Central entered into a contract with another party to sell the property. You said the district court didn't address the option contract issue, and that might It seems to me you may have argued below that because Central didn't yet possess the property that that affected the termination issue. But can you point us to where you argued that the existence of the option contract affected the standing issue, the privity of estate issue? Your Honor, at page 4 of our reply brief, we quote from the summary judgment papers below. And we say, quote, when plaintiff and WAMU entered into the WAMU lease, plaintiff did not own the property. A party cannot lease what it does not possess. We cite two Texas cases and go on to say, indeed, plaintiff did not own the property until almost five months after FDIC receiver informed plaintiff on November 22, 2008, that the WAMU lease was repudiated and JPMC provided a confirmation of that. Now, Your Honor, under the Supreme Court's case in common, KAMEN, this court is not limited to the particular legal theories below, although we think that covered it. The court can identify and apply the proper construction of governing law, so we think it was raised. But more importantly, perhaps, even if it wasn't raised, we think this case presents the exceptional circumstances required by this court in cases like AG acceptance. Whether or not privity could have existed between Central and Chase is a pure question of law. And if this court does not decide that question, $1.3 million will be lost. And in AG acceptance, a loss of $200,000 was thought to be enough. You may be right that there's good reasons to excuse a forfeiture, even if there was one. But the problem is in Excel, there was an argument that there was no privity because some of the entities hadn't come into possession of the property, even though they owned it. And Judge Higginbotham for the court says that was forfeited. So we have in a very similar case, on a very same privity issue, we have a recent decision saying, you know, we find a more specific argument was forfeited. So how do you get around that? Two critical points, Your Honor. We didn't make that argument. Judge Higginbotham mentioned in his opinion that the law provided that. He filled it out. We never made that argument nor did we ask the court to accept it. But, Your Honor, more importantly, the issue here is a prudential standing issue. Whether or not there's privity of estate or not goes to prudential standing. This court retains discretion to always consider prudential standing and on many instances has done so where it was not raised below at all. It considered the issue sui sponte because it goes to justiciability. There's no question here that the issue of whether or not Central had third party standing was both raised and addressed by the court below. So the prudential standing issue was raised and, again, going back to Kamen, this court is not limited to the particular legal theories. Your Honor, I see that my time is more than half over. If you have more questions on standing, I want to answer them. But I'd also like to address the alternative argument, the merits argument in this case. Your cut line is you say it wasn't waived or forfeited, but even if it was, because it's such a pivotal issue of law, we should address it based on our own precedent that's there. That's some of what you're arguing on that point. Is that right? That's correct, Your Honor. Okay. My point is it was sufficiently raised under Kamen, but if it wasn't, it's a prudential standing question that this court regularly considers, and beyond that, the exceptional circumstances for considering it. We believe all three of those grounds. Now, on the merits, Your Honor, it is undisputed in this case. No question. As Judge Sparks said below, Central wanted out of this lease like a burning house. Central requested a termination. And we quoted in our brief the email that they sent to the FDIC that first raised this issue. And there's just no doubt about it. At page 10 of our opening brief, the email says this is from Central to the FDIC. As it stands today, we are in default of our lease because we have not delivered the premises to WAMU per the lease. And further down, they say, we have requested that WAMU and or Chase release CSW from the lease obligation in order to pursue other options. The FDIC responded by checking with Chase and see if they wanted to give up the lease, because, of course, that's what we believed was the state of play. And it also responded by expediting its repudiation procedures. And then what happened is that Central went off, signed a contract, made a $100,000 profit, and seven months went by, and it turned around and sued. Now, the district court said, I understand all of that, but the problem, the district court said, is that you, FDIC, or you, Chase, negligently misrepresented that Chase had the right to reject the lease. The court said that based on its holding that the language addressing that issue is plain, unambiguous, and clearly understood. So you think the district court did find there was a termination? I mean, to me, it's not entirely clear what the district court found. I know there's all this discussion about the misrepresentations, but you read the district court as first saying there was a termination, but then they basically, he says, it was induced by the misrepresentations? Yes, Your Honor, I mean, I think... Where can you point me to where you think he found a termination? Well, the first place I point to, Your Honor, again, is the e-mail, and this is central speaking, central saying, it's an admission in the record. Now, look at the e-mail. Where did Judge Sparks make a factual finding or conclusion of law, whatever you want to term it, that there was a termination? I think he found it in the opinion at the close of the trial, and I believe that's the reason why he addressed the negligent misrepresentation issue. There would have been no need for him to reach that issue otherwise. What he said was he recognized that there was a request for a termination, he recognized that a repudiation was offered, and he recognized that Central, believing it had got the termination it requested, went off and sold the property. The issue that Judge Sparks addressed, as a matter of fact, in his initial decision, his initial decision, he denied summary judgment to Central because he says in that initial decision, there are two issues of fact which I want to go to trial on. One, was there a negligent misrepresentation? And two, was there an estoppel? Of course, a negligent representation or an estoppel would be irrelevant absent the termination. And then the trial was about that issue, and at the end of the trial he said two things. He said, first of all, I find there's a negligent misrepresentation because the FDIC and Chase said that Chase had the unilateral right to reject the lease. However, Your Honor, under the Texas Supreme Court's controlling decision in the FINA case, the court first stated the well-worn rule that statements of opinion about a legal point are not actionable as misrepresentations of fact. The court then noted there's an exception to that rule where the statement is intended and understood as a statement of fact rather than of law. And the court found that that was the case here. All well and good. The FINA further says, and I quote, where the parties are in equal barring position with equal access to legal advice, there is no room for application of the doctrine that misrepresentations of points of law will be considered misrepresentations of fact if they were so intended and understood. That's at 726 Southwest 2nd at 540. The issue here, Your Honor, comes down to this. As the FINA court said, the key is, quote, did the parties enjoy the opportunity of making their own investigation and determination of the illegal effect of their actions? Unquote. The language here is unambiguous. The purchase and assumption agreement was available to all on the FDIC's website and Central was represented by counsel. Indeed, Your Honor, the proof is in the pudding. The only reason why we're here is because Central and its counsel seven months later looked at the purchase and assumption agreement and they concluded that it did not give Chase the right to reject the lease. The problem is that was seven months too late and as the Court of Appeals of Texas recently said in Matheson, that's your problem. If you acted not in accord with your own interests, didn't have your counsel review the key document, didn't reach your own conclusion on that point, don't come to court and complain. Again, the critical point is the opportunity of making their own investigation and determination of the legal effect of their actions. Central could have looked at the purchase and assumption agreement, read it, drew its own conclusion about what it meant seven months earlier before any of the problems that it's complaining about passed. And so under FINA, there can be no negligent misrepresentation. Therefore, the factually undisputed termination of the lease took place and that should be the case. And I see my time is up. All right. Thank you, sir. You reserve time for rebuttal. Thank you. All right. Mr. Casling? May it please the Court, my name is Kemp Casling and along with Bruce Bennett, we represent Central Southwest Texas Development, the appellee here. I want to address Mr. Brooks' arguments about the standing part first in his two-part analysis. In the Excel Willowbrook case, we were here a year ago, Judge Clement's opinion and the current opinion, she said that the FDIC, she said two things that are equally applicable to this case. First, she said the FDIC is on the wrong side of 100 years of property law. That's applicable here as well. Secondly, she said they shouldn't expect to win on arguments that they didn't make in the district court. That applies here as well. On the first issue, their argument essentially is, first of all, they argue this is an option contract. I don't agree with that, but so my opinion is so what? My argument is so what? Texas law, the Texas Supreme Court has said that when you have an option contract, at the time the option contract is formed, the optionee obtained an equitable interest in the property that he could legally prevent the seller from selling the land to someone else. So the purchaser, the one with the option contract, can sue the would-be purchaser over here and stop them from buying the land. He has standing to make that argument. Texas courts have also held that a person under an option contract has standing to stop a foreclosure because when you exercise when you have the contract to buy the land you have an equitable interest in land. The Texas cases that we cited in our brief also say that as opposed to third parties, you also have equitable title in the property. That gives us standing. What Excel and Willowbrook stood for is the proposition that while they didn't go with us on the third-party beneficiary argument, the court correctly said that you have to look to property law to determine the rights of the parties where property law is involved. And in this case, as I've said, we have standing based on our position as the purchaser. They've said in their brief, they say you can't lease what you don't own. That's just flat-out wrong. There are cases that  one, do you have the authority of the owner of the property to sign the lease? Here, we clearly had the authority of the owner. He wanted us, he was happy that we had a lease with Washington Mutual because he was going to sell us this, it was an old warehouse property on Burnett Road in Austin, Texas that wasn't good for anything else. And we were fixing it, we were buying it and we were going to put a bank branch in there. We were going to pay him a bunch of money for it. And he was happy about that. There was no claim that we did not have authority from the owner. They didn't call the owner as a witness. I didn't call the owner as a witness because this argument about possession was never made. It simply was never made. If they had made it, I would have brought Mr. Bomar in as a witness. And more importantly, if they had made this argument, Judge Sparks would have addressed it in his denial of their summary judgment motion. To understand the chronology of this, the very first case that had this issue that I'm aware of anywhere in the United States was the 290-71 case that was a Judge Sparks case in Austin in the Western District of Texas. Judge Sparks ruled in our favor in that case. We came down and argued it in the 5th Circuit. That argument in my opinion went well for us. We were waiting for an opinion from the 5th Circuit and the case settled. Then you have the Excel Willowbrook case, which was Judge Hoyt down in the Southern District. And in the Southern District, they consolidate all the cases. There were several. They consolidated into one case. Judge Hoyt relied on Judge Sparks' opinion in the 290-71 case and agreed with it. Then the Excel Willowbrook case comes down here to the 5th Circuit and the 5th Circuit agrees with Judge Hoyt that the standing, the privity, the lessor has privity with the assignee if the assignment assigns all of the lessee's interest in the lease. That was the holding in the Excel Willowbrook case. That's what Judge Hoyt said. That's what the 5th Circuit said. Now we're back in front of Judge Sparks again and he said in his denial of their motion for summary judgment on the standing issue, he said I ruled on 290 three years ago. Judge Hoyt ruled on Excel Willowbrook about a year or so, a year or two ago. This was back in 2012. He said to the FDIC in his opinion on the denial of their motion for summary judgment you were making the same argument you made three years ago in front of me and about a year ago in front of Judge Hoyt down in Houston. I denied it then and I disagree with you now. Never once in the rest of this case did they ever come back in front of Judge Sparks and say wait a minute Judge there's a distinction here. These guys hadn't actually closed on the purchase of the property and that makes a difference. They never did it and if they had done that I guarantee you he would have addressed it in his denial of their motion for summary judgment or he would have addressed it in his findings of fact and conclusions of law and this precise unique issue didn't come up frankly until the Fifth Circuit issued the opinion in Excel Willowbrook last spring and the FDIC read the opinion and said well now we've got this privity they've gone against us on the privity argument so let's argue that the fact that this defendant hadn't closed on the purchase that makes a difference now. They never made it in front of Judge Sparks they never made it to me in the district court or I would have had Mr. Bomar there testify and the fact of the matter is my client was in possession of the property. Even though the contract says we're not in possession until we close we were in possession. This was an old warehouse building that was going to be torn down I think there was a paint shop in the back and some kind of wood furniture crafting place in the middle of it. It was only about half leased up because it was kind of a dilapidated building in what was then a dilapidated part of town that's now being revitalized. Our client instructed the owner he could not renew any leases for those people because we're kicking them out and we're going to demolish the building and build a bank branch. To understand how this works and this goes also to their statement that you can't lease what you don't until you own it and I learned this in handling these cases because I had not done anything like in these kind of cases before but the way this works is if I'm a real estate developer I find a piece of property that I think would be good for a bank branch. I go to the owner and I say I'll buy this property from you. We sign an earnest money contract. I put up the earnest money. I've got usually 90 to 180 days for a feasibility study. Then I go find a bank go find Washington Mutual say hey I got this corner site on Burnet Road in Austin it's got an old warehouse there we think this area is getting revitalized we think this is going to be a good place for a bank branch. There's a Bank Texas or something down the road that's moved in. It looks like it's going to be a good area. The bank says great. Here's this lease. You'll sign a 20 year lease with us and pay us. We've got a contract to purchase it. If we close on that and we build this bank branch for you, you're going to lease it from us for 20 years at $12,000 a month. Bank says that sounds like a great idea. We'll do it. They sign the lease. My client then takes the lease and the purchase money earnest money contract to another bank and says okay we can buy this property for $1.2 million then we can build this bank branch for $300,000 and then we can lease it for 20 years and make whatever ends up being the rate of return we'll make 20% on our money and pay you back Mr. Banker and the bank says great we'll loan you the money. That's how this industry works and my client signed the lease the lease agreement with Washington Mutual resided in the lease agreement that Washington Mutual was aware that my clients did not own the property yet and that was a condition of the lease that we were going to have to close on the property and before they would start paying rent obviously we'd close on the property to On the, if you can turning to the merits do you agree that the district court found that there was a termination and the whole issue was just whether that termination was induced by the other side? No, I was looking for that when you brought that up. I'll find it I couldn't find it in that quick I did find in his denial of they filed a motion for summary judgment on this point and he said in his motion for summary judgment the court finds there's a fact issue as to whether plaintiff's communications with the FDIC and Chase constitute a termination or a request to terminate and I saw that but did he ever decide that fact issue at the trial? I believe and I think in the findings of fact he said there was no he said that there was Chase argues that we requested to terminate the lease and that there was a mutual agreement to terminate the lease he then says having heard the evidence and reviewed the full record the court finds that Chase's arguments fail both factually and as a matter of law so yes he addressed the issue he specifically addressed the issue and then so he said first of all you're wrong there was no mutual termination of the lease and even if your argument is that my client was terminating the lease you are stopped by negligent misrepresentation and by estoppel because you have to remember back in the time frame of 2009 and 2010 when all this was going on the real estate business was I mean it was going down and my clients who were in the real estate business knew what was happening and they were desperate the person they had the lease with had been taken over by the FDIC the FDIC had done this purchase assumption agreement with Chase they told my client you are out of luck. Chase has the right to reject it they've rejected it and we're going to repudiate it you got nothing you need to go try to find somebody or do something to try to mitigate your damages and my client did that he ultimately closed on the property and then he sold it and Judge Sparks took that into consideration in the damages part of the case which they're not really arguing that we're not entirely damaging but he looked at that and said okay so you bought the property and you sold it we have to take that into consideration so I'm going to reduce your damages by what the extra that you got but on this issue of whether the negligent misrepresentation would have got you know excused any termination or undone any termination what about this language from the Texas Supreme Court that that does not apply if you have people you know in an equal position here you had lawyers on both sides it really wasn't a particular issue of FDIC or receivership law it was just interpreting a contract are these bank premises or are these other real estate so why weren't the parties equally situated with respect to that? Judge Sparks addressed that in his finding of facts and conclusions law and he said when you got the federal agency that is in charge of all this telling you there's a big difference in having a lawyer who's a real estate guy who drafts leases and earnest money contracts and then having a lawyer being told by the FDIC that this is our contract this is a contract we did with JP Morgan Chase Why are the Feds any better at interpreting contracts than any other lawyer? I'm sorry? Why are the Feds better at interpreting contracts than any other lawyer? Well the reason what Judge Sparks said in his opinion is it's their contract I agree with you they probably shouldn't be but in this case they're the FDIC this is their contract they're in control and they basically run the show and they told my client and it's not just it wasn't told as a matter of fact it wasn't understood as a matter of fact and this is a factual determination by Judge Sparks in his findings of facts and conclusions of law and he listened to my client testify and we had those emails back and forth and my client testified look we weren't trying to terminate the lease we were being told point blank you do not have any basis you don't have your lease has been rejected and the FDIC is repudiating it so you have nothing and my client understood that to be a fact he accepted it as a fact and he went forward and frankly it wasn't until well again the way this happened was the very first case the 290 case I filed a lawsuit against JP Morgan Chase actually I sent JP Morgan Chase a demand letter. I have one more question about FINA that was a case the Texas Supreme Court case where they said fraud if fraud which requires an intent to defraud someone induces someone to terminate a contract understandably you shouldn't be able to benefit from that fraud and the other party should get to undo the termination here we don't have a fraud argument it's negligent misrepresentation so if there was no intent to deceive on the part of the FDIC or Chase why should FINA apply? Well what applies is negligent misrepresentation applies because negligent misrepresentation actually doesn't require Judge Sparks used that as his opinion but the first Texas Supreme Court case on negligent misrepresentation is the Sloan case back in the I think the 70's or 80's and that says there's three elements you have to provide somebody false information or false representation of a fact that they understood to be a fact and they relied on it and that's what my client But negligently not with the intent to defraud well let me ask it maybe another way are there any cases I know there's a cause of action for negligent misrepresentation but are there any cases saying a negligent misrepresentation can get you out of a contract essentially that it's a defense to a terminated contract I don't know the answer to that I would have to look and we could supply the court with a letter brief after this but I do know that also in addition to negligent misrepresentation he also said that they were stopped from claiming the termination because of their misrepresentation as a secondary basis first he said they didn't terminate it second he said even if they did you're guilty of negligent misrepresentation so it's not binding on them thirdly even if they did you're stopped even claiming it because of what you did and if we believe the elements of negligent misrepresentation and the elements of estoppel are there and those were findings of fact by the district court in his findings of facts and conclusions of law we think they're binding on the FDIC they had said that well I think I've covered the two issues that they wanted that they brought up and unless the court has any questions finished thank you thank you sir appreciate it back to you Mr. Brooks on the issue of possession alright let's go back to your standing but just for a second at least for my ears counsel opposite makes a forceful argument that A had the issue been raised he would have put on as witness Mr. Beaumont B the district court would have addressed it blotty blotty blotty now putting aside the next piece of that is whether we should sui sponte deal with it I mean that's a forceful argument the FDIC I mean you know that it wasn't raised so you still stick with your guns that it was I saw what you cited from but normally on a matter like this we're not searching and meandering to figure out if it was or wasn't you know on a neon sign kind of issue like that the FDIC's been around for a while and you know it's not like an issue that's kind of didn't know it was there so you sticking with your guns that it was raised etc and whatever we decide about that we decide about it yes your honor I'm not trying to get you off it I just want to make sure I understand what you're saying what we said in plain English it's quoted in our summary judgment brief when plaintiff and WAMU entered into the WAMU lease plaintiff did not own the property a party cannot lease what it does not possess in our brief we cite page 22 of our opening brief we cite the 2616 for the proposition you've said it but to the point Judge Sparks is not a wallflower judge he waxes on about a lot of stuff I'm missing that if this was so palpable that he didn't utter a word about it that it was there so at least color me skeptical on whether or not this was really raised notwithstanding what you read which at least puts you to the point of the best argument of the case you have for it being the prudential standing issue that we ought to based on our precedent really say you didn't waive it I would cite the Cibillo case your honor in which this court raised the issue of prudential standing and then held that prudential standing was lacking there's no question that the issue of whether or not central had third party standing to litigate the meaning of the PAA was not only raised below it was addressed it was the base of the court's decision so prudential standing third party standing was raised the privity issue quite frankly really came into focus when this court entered the Exa-Willibrook decision that was more than a year after the judgment was entered in this case but in any event your honor on this possession issue give counsel his two minutes back I took up his two he had taking him down the privity road so give him two minutes on the clock now you're back on your merits argument counsel just one quick thing on possession your honor we heard some factual suggestions that the parties were or were not in possession the issue is resolved by the terms of the contract it's paragraph 10 page 7 of 13 quote seller will deliver possession of the property to buyer upon closing goes on to say until closing seller will operate the property in the same manner as on the effective date any possession by buyer would be as a tenant at sufferance so there was no possession here on the merits issue your honor again I just come back the question was whether or not the district court had found that there was a termination or not I don't want to beat a dead horse but as I said before there is no question there can be no question as to whether or not central requested a release from the release this is an email from central to FDIC it's in our brief at page 10 we have requested that WAMU and or chase release CSW from the lease obligation in order to pursue other options now judge I thought you raised some good questions which is whether negligent misrepresentation even applies here and the only point that we would make is we don't think that negligent misrepresentation would be a ground for freeing somebody from their agreement to terminate a contract but even if you assume that it is in FINA the court was dealing with the issue of fraud but that's the case that judge sparks relied on for the exception to the rule don't forget here the rule is in the general case a representation about a point of law cannot be an actionable misstatement of fact on any legal theory there's an exception to that rule that exception came from FINA from a fraud case and our only point is if the exception that judge sparks relied upon which is if the parties intended and understood the statement to be one of fact if that exception applies then certainly the additional rule stated in FINA which is that exception does not apply where as here you know you have a situation where the parties were bargaining at arm's length represented by counsel and had a ready opportunity to view unambiguous language of a contract I have one just a curiosity more than something that's going to affect the outcome but why I know Chase filed a brief adopting your brief basically why is the FDIC taking the lead in this and I guess these other cases I mean the judgment affects Chase's there are two reasons your honor the first and the most important is these cases interpret the FDIC's purchase and assumption agreement so we have a very strong interest the second reason the monetary reason that you focused on is that the purchase and assumption agreement includes an identification provision and we are to identify Chase if Chase is held liable for a liability that didn't transfer under the purchase and assumption agreement our strong view upheld in other circuits but certainly persistently put forth here is that this liability didn't transfer so it's an identification provision I thank the court for your time and we would ask for reversal thank you counsel on both sides